IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KATHY FUJIWARA, as Administrator of the ESTATE of WARREN KENT DAVIS, deceased | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | 1:24-CV-00957 |
| TERRY S. JOHNSON, Individually, and in his Official Capacity as Alamance County Sheriff, UNKNOWN JOHN DOE ALAMANCE COUNTY SHERIFF'S DEPUTIES 1-10, in their individual capacities, and UNKNOWN SURETY, as Surety, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Lindsey A. Freeman, District Judge.

This litigation arises from the tragic shooting death of Warren Kent Davis during an encounter with Alamance County sheriff's deputies. Defendant Terry S. Johnson ("Johnson"), Alamance County Sheriff, filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Dkt. 15. Johnson moves to dismiss the complaint ("Complaint") filed by the Estate of Warren Kent Davis (the "Estate") through its administrator and personal representative, Kathy Fujiwara ("Fujiwara"), in its entirety and against all defendants. *See* Dkt. 1.

For the reasons outlined in more detail below, Johnson's motion is GRANTED in part and DENIED in part. It is granted in part because the Complaint does not

adequately allege a basis for holding Johnson liable pursuant to § 1983 in either his individual or official capacities. As a result, there is no predicate wrongful act pleaded against Johnson, so the Estate's state law wrongful death claim, at least as to him, must also fail. The Estate also erroneously asserts state-law intentional infliction of emotional distress and negligent infliction of emotional distress claims on behalf of Fujiwara, who is not a party to this action.

The motion is denied in part, however, because the Estate does adequately allege—at this stage in the litigation—a deprivation of Warren Kent Davis's ("Davis") rights under the Fourth Amendment by the ten unidentified sheriff's deputies (the "John Doe Deputies"). Also, at this juncture, when the deputies have not even appeared, it is too early to adjudicate whether the wrongful death claims are time-barred against them.

## FACTS AND PROCEDURAL HISTORY

The Estate, through its administrator and personal representative, Fujiwara, brings federal and state law claims arising from the shooting death of her son, Davis. The Estate sues Alamance County Sheriff Johnson, the ten John Doe Deputies, and an unknown surety providing insurance coverage to the Alamance County Sheriff's Office (the "Unknown Surety," and, collectively with the other defendants, "Defendants"). *See generally* Dkt. 1. The Estate asserts that: (1) Johnson and the John Doe Deputies deprived Davis of his rights under the Constitution by employing excessive force (Count I); (2) Johnson and the John Doe Deputies should be held liable for Davis's injuries under the North Carolina wrongful death statute (Count II); and

(3) Johnson intentionally and/or negligently caused Fujiwara, Davis's mother, extreme emotional distress (Count III and IV, respectively). *See* Dkt. 1 ¶¶ 55-86.

On May 8, 2023, Davis was shot and killed by Alamance County sheriff's deputies following an encounter with police. *See* Dkt. 1 ¶¶ 19, 24, 43. Davis suffered from mental health issues, experienced substance abuse problems, and had a documented history of problems with his girlfriend. *See id.* ¶¶ 15-17. While the pair were still living together, police were called to their residence several months earlier following what appeared to be a domestic dispute that occurred while Davis and his girlfriend were drinking. *See id.* ¶ 17. After that incident, Davis's girlfriend took out a domestic violence protective order ("DVPO") against Davis which, among other things, prohibited Davis from being physically present at the home. *See id.* ¶¶ 18, 20. The Complaint alleges Davis and his girlfriend nonetheless continued to stay in contact while Davis sought treatment for substance abuse. *See id.* ¶¶ 21-23.

On May 8, 2023, the date of the encounter with the police, Davis's girlfriend picked up Davis and brought him to their former residence in violation of the DVPO. *See id.* ¶¶ 19-20. Sometime thereafter, police were called to remove Davis from the home. *Id.* ¶ 24. Police appear to have spoken to Davis over the phone before responding to the scene. *See id.* ¶ 26.

The Complaint alleges tensions grew after Sheriff Johnson arrived at the scene with approximately ten John Doe Deputies. *See id.* ¶¶ 28-30. Although the Complaint provides no reason why, Davis "was shot in the arm by law-enforcement" at some point after their arrival. *See id.* ¶ 30. After Davis was injured, Johnson

3

"communicat[ed] with" Davis and "tried to persuade [him] to turn himself in to get arrested." *See id.* ¶¶ 31-33. Johnson never pulled his service weapon while he was talking with Davis. *See id.* ¶ 33. According to the Complaint, while Johnson spoke with Davis, all ten John Doe Deputies surrounded Davis, who then "ducked under a truck" parked in front of his girlfriend's home and "laid prone on his stomach." *See id.* ¶¶ 35-36. While Johnson continued to try and coax Davis into submitting to the authorities, one of the John Doe Deputies allegedly threw a non-lethal flashbang under the truck. *Id.* ¶¶ 37-38. "[R]eact[ing] to the sound of the flash-bang," the John Doe Deputies allegedly opened fire on Davis, striking Davis repeatedly with bullets and killing him. *Id.* ¶¶ 39-41, 43.

Although the Complaint acknowledges that the Alamance County Sheriff's Office issued a press release to the contrary (*see id.* ¶¶ 46-49), it alleges that Davis was neither aggressive nor armed during the encounter with police (*see id.* ¶¶ 50-51). It further alleges that all the John Doe Deputies knew Davis was unarmed at the time they employed lethal force. *See id.* ¶ 42. The Complaint contends that body camera footage, which has not been proffered for review, discredits the Sheriff's Office's press release, which stated Davis had a knife and lunged at officers twice before he was fatally shot. *See id.* ¶¶ 47-49, 52.

The Estate filed its Complaint on behalf of Davis on November 19, 2024. *See generally* Dkt. 1. It brought claims against the Defendants for excessive force under the Federal Constitution, wrongful death under North Carolina law, and intentional and negligent infliction of emotional distress under North Carolina law. *See id.* ¶¶

55-86. The only identified Defendant, Johnson, filed an Answer on March 5, 2025. *See* Dkt. 9. Thereafter, and before the parties had begun discovery, Johnson moved this Court for judgment on the pleadings and filed a supporting memorandum of law. *See* Dkts. 15-16. The motion is fully briefed (*see* Dkts. 16, 29-30), and, for the reasons explained below, the Court denies the motion in part and grants the motion in part.

## ANALYSIS

Johnson moves for judgment on the pleadings, contending that the Complaint fails to allege a plausible claim for relief against any of the Defendants for all the federal and state law claims. *See generally* Dkt. 15. "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Thus, for the Estate's claims to survive, the complaint need only to allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court must accept as true all well-pleaded allegations (*Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013)), and view the allegations "in the light most favorable to" the Estate (*Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014))).

As to the Estate's federal claims, Johnson specifically contends that the Estate has failed to raise a plausible § 1983 claim for three reasons: (1) the John Doe Deputies—and thus, Johnson by extension—did not violate Davis's constitutional

5

rights; (2) Johnson is not liable in his personal capacity; and (3) Johnson is not liable in his official capacity. *See* Dkt. 16 at 8-16. At this stage in the litigation, although the Estate has pleaded a plausible § 1983 claim against the John Doe Deputies, the Estate has not adequately pleaded that Johnson should be liable for their actions, even though he was on scene at the time of the incident. The federal law claims against Johnson, therefore, must be dismissed.

For the Estate's state law claims, Johnson asserts that: (1) Johnson cannot be liable for wrongful death without a plausible predicate act and, moreover, the Estate did not timely file its wrongful death claim against the John Doe Deputies; and (2) the Estate failed to allege that Johnson intentionally or negligently inflicted emotional distress on Davis. While the Court agrees that Johnson cannot be liable for wrongful death without a viable predicate act, this is not the right procedural posture to determine whether the claim is time-barred against the yet-to-be-identified John Doe Deputies. The Court agrees that the Estate has improperly pleaded intentional or negligent infliction of emotional distress claims on behalf of Fujiwara, Davis's mother, who is not a party to this action.

## I. While the Complaint Fails to Allege a Plausible § 1983 Claim Against Johnson, the Allegations Against the John Doe Deputies are Adequate at this Stage.

Because the Complaint does not allege that Johnson shot Davis, the Estate's § 1983 claims against Johnson are contingent on a finding that the John Doe Deputies deployed excessive force and that Johnson is responsible for their actions. To adequately plead a § 1983 claim, a plaintiff must plausibly allege: (1) the defendants acted under color of state law; (2) the defendants' actions deprived the

6

plaintiff of their constitutional rights; and (3) these actions caused injury to the plaintiff. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In this case, the viability of the Estate's federal § 1983 claims depend upon whether the John Doe Deputies unreasonably deployed lethal force in violation of Davis's constitutional rights. Considering the allegations in the light most favorable to the Estate, the Estate has plausibly raised a claim that the John Doe Deputies violated Davis's Fourth Amendment rights. However, the Estate has failed to plausibly allege that Johnson, despite being on scene, can be liable for the tragic shooting of Davis in any respect.

### A. The § 1983 Claims Against the John Doe Deputies, Taken in the Light Most Favorable to the Estate, are Plausible.

At this stage in the litigation, the Estate adequately alleges that the John Doe Deputies employed excessive force against Davis in violation of his constitutional rights. The Fourth Amendment's prohibition on unreasonable seizures also "bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).[1] An officer's use of force is excessive if it is

---

[1] Although the Estate purports to bring claims on behalf of Davis for excessive force under the Fifth Amendment's Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment, "[a] claim that a law enforcement officer used excessive force during a stop or arrest is 'analyzed under the Fourth Amendment.'" *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Further, the Fourteenth Amendment's Due Process Clause, *not* the Fifth Amendment's Due Process Clause, applies to state officers like the Defendants. *Cf. Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 537 (4th Cir. 2022) ("The Fifth Amendment's Due Process Clause does not apply to municipalities, but only to federal actors."). Count I is dismissed to the extent that it asserts violations of Davis's rights under the Fifth and Fourteenth Amendments.

objectively unreasonable. *Id.* "The subjective intent or motivation of an officer is irrelevant[.]" *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2017). As acknowledged in Johnson's motion, determining whether an officer's use of force is reasonable is a "fact-dependent question" that "must be judged from the perspective of a reasonable officer on the scene." *See* Dkt. 16 at 9 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also Jones*, 325 F.3d at 527 ("[T]he question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." (quoting *Elliot v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996)). A court must give "careful attention to the facts and circumstances of each particular case" (*see Graham*, 490 U.S. at 398), including an assessment into "whether the totality of the circumstances justified" the force employed (*see Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

To determine the reasonableness of the John Doe Deputies' actions in this case, the Court assesses the officers' use of lethal force under the factors set forth in *Graham v. Connor*, namely: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *See* 490 U.S. at 396.[2] The extent of the plaintiff's injuries is also relevant. *See Nazario*

---

[2] The Estate's argument that *Graham* should not apply at the motion to dismiss stage (*see* Dkt 29 at 5-6) is meritless. The Fourth Circuit routinely assesses the *Graham* factors when resolving a motion to dismiss. *See, e.g., Brockington v. Boykins*, 637 F.3d 503, 506-07 (4th Cir. 2011); *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 674-75 (4th Cir. 2024).

Case 1:24-cv-00957-LAF-JGM    Document 32    Filed 03/03/26    Page 8 of 23

*v. Gutierrez*, 103 F.4th 213, 234 (4th Cir. 2024) ("[I]n the Fourth Circuit, we consider a fourth factor—the extent of the plaintiff's injuries." (internal quotations omitted)).

In this case and at this stage in the litigation, the second factor—whether Davis could reasonably have been considered a threat—controls the analysis. Although the Estate dismisses the severity of the crime as a "mere violation of a domestic violence order" (*see* Dkt. 16 at 6), little is known about the situation the officers may have found themselves in that night. According to the Complaint, Davis was actively resisting arrest when lethal force was deployed because he was lying underneath a car to evade turning himself in to authorities. *See* Dkt. 1 ¶¶ 36, 38-39.[3] And no one contests the extent of Davis's injuries, as the force employed, whether excessive or not, resulted in the tragic loss of Davis's life. *See id.* ¶ 43.

At this stage of the proceedings, however, and considering the facts in the light most favorable to the Estate, the Complaint plausibly alleges that Davis did not pose a threat to Defendants when the John Doe Deputies employed lethal force. *Cf. Brockington v. Boykins*, 637 F.3d 503, 507 (4th Cir. 2011) (plaintiff stated claim for excessive force when he was repeatedly shot when he no longer posed threat to defendant officer). According to allegations in the Complaint, which this Court must accept as true at this juncture, Johnson spoke with the injured Davis—who was

_____

[3] Although Johnson suggests "the Estate makes no allegations as to whether Davis was resisting arrest," Dkt. 16 at 10-11, the Complaint states Johnson tried to persuade Davis to turn himself in and that, at some point, Davis moved away from Johnson and "ducked under a truck" while Johnson continued to coax him into surrendering. *See* Dkt. 1 ¶¶ 32, 36-37. Given these allegations, the reasonable inference at this stage is that Davis was actively resisting arrest. *See Iqbal*, 556 U.S. at 679 (court must accept all well-pleaded allegations as true).

previously shot by law enforcement during the encounter—and continued to try and persuade Davis to turn himself over for arrest. *See* Dkt. 1 ¶¶ 30, 31-32, 37. Johnson never pulled his service weapon during this conversation. *Id.* ¶ 33. Davis then moved away from Johnson, ducked under a truck and lay prone on his stomach. *Id.* ¶ 38. While it is unclear whether Davis had a knife that night,[4] the Complaint alleges he was unarmed (*see* Dkt. 1 ¶¶ 50-51), and he likely would not have been able to threaten the officers while lying under the truck and wounded, even if he had a knife. Regardless, even if Davis was armed at some point before he was fatally shot, "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005). Thus, drawing all inferences in favor of the Estate, as the Court must at this stage, it is plausible Davis did not pose a reasonable threat to the officers when he was shot. *See Brockington*, 637 F.3d at 507.

---

[4] Although the Complaint acknowledges that the Alamance County Sheriff's Office issued a press release stating that Davis had twice lunged at the deputies with a knife during the encounter (*see* Dkt. 1 ¶¶ 47-49), the Complaint alleges "[u]pon information and belief" that body-camera footage from the John Doe Deputies will demonstrate that Davis neither lunged at any of the Deputies nor armed himself with a knife at any point during his interaction with police (*see* Dkt. 1 ¶¶ 51-54). The Estate may plead facts based on information and belief, where, as here, they are not "wholly conclusory" (*see Kashdan v. Geo. Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023)) because the underlying "facts are peculiarly within the possession and control of the defendant" and the allegations "make[] the inference of culpability plausible" (*see Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). It is at least plausible that Davis did not pose a threat to the officers when he was first shot, especially since Johnson continued to communicate with Davis to get him to surrender to police after Davis was injured by a gunshot. *See* Dkt. 1 ¶¶ 31-32, 37.

This analysis is admittedly complicated by the allegation that the John Doe Deputies fatally shot Davis after they mistook for gunshots the non-lethal flashbang tossed at Davis. *See, e.g.*, Dkt. 1 ¶ 58 (describing the John Doe Deputies shooting Davis as an "overreaction" to the flashbang). According to the Complaint, a John Doe Deputy deployed the flashbang while Davis was lying on his stomach underneath the truck. *Id.* ¶ 38. It further asserts that "immediately after the deployment of the flash-bang round, several, if not all of the deputies, opened fire on [Davis]." *Id.* ¶ 39. The analysis thus turns on whether the John Doe Deputies' reaction to the tossed flashbang was reasonable.

At this juncture, accepting the facts as they have been alleged in the Complaint, it is plausible that the officers' reaction and deployment of lethal force was unreasonable. Importantly, "a mistaken understanding of the facts that is reasonable in the circumstances can render a seizure based on that understanding reasonable under the Fourth Amendment." *Milstead v. Kibler*, 243 F.3d 157, 165 (4th Cir. 2001). The mistake-of-fact doctrine is why, for instance, it may be reasonable for an officer to employ lethal force on a suspect when that officer mistakenly believes the suspect is reaching for a lethal weapon. *See id.*; *Knibbs v. Momphard*, 30 F.4th 200, 225 (4th Cir. 2022) (collecting cases). Indeed, the Fourth Circuit has observed that lethal force may be reasonable if "the objective basis for the threat was real, even if the gun was not." *Franklin v. City of Charlotte*, 64 F.4th 519, 531 (4th Cir. 2023) (internal quotations omitted and citation modified). But the entire analysis hinges on whether the "mistake [of fact] was *reasonable*." *Id.* at 532 (emphasis in original).

At this stage of the litigation, the Complaint alleges that the John Doe Deputies made an unreasonable mistake of fact. The Complaint alleges that the Deputies "knew [Davis] did not have a gun on his person." *See* Dkt. 1 ¶ 42. That allegation is plausibly supported by allegations that Johnson tried to convince Davis to cooperate with police without employing (or threatening) lethal force while the John Doe Deputies surrounded Davis and watched. *See id.* ¶¶ 32-33, 35, 37. "[V]iewing [the Complaint] in the light most favorable" to the Estate and "accepting as true [its] well-pled facts," these allegations are enough to survive a motion for judgment on the pleadings. *See Brockington*, 637 F.3d at 505, 507; *see also Tan Lam v. City of Los Banos*, 976 F.3d 986, 1002 (9th Cir. 2020) (collecting cases).[5]

### B. The Estate Fails to Plead that Johnson in His Individual Capacity Deprived Davis of His Fourth Amendment Rights.

The Complaint fails to plausibly allege that Johnson personally deprived Davis of his rights under the Fourth Amendment. "To establish personal liability under § 1983 … the plaintiff must affirmatively show that the official charged acted personally in the deprivation of plaintiff's rights." *Williamson v. Stirling*, 912 F.3d

---

[5] In one sentence in his motion, Johnson asserts he (and not the John Doe Deputies) should be entitled to qualified immunity even if the Estate adequately pleaded excessive force. *See* Dkt. 16 at 14. That is not sufficient to permit any of the Defendants to raise the defense at this stage. *Cf. Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006) ("qualified immunity is an affirmative defense" and "the burden of pleading it rests with the defendant" (internal quotations omitted)); *see also Hammock v. Watts*, 146 F.4th 349, 364 (4th Cir. 2025) (state officials bear the burden of establishing their entitlement to qualified immunity); *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) (plaintiff does not need to plead facts necessary to overcome anticipated qualified immunity defense). The Court thus declines to rule on qualified immunity at this time.

154, 171 (4th Cir. 2017). The Complaint unambiguously alleges that Johnson never drew his service weapon. *See* Dkt. 1 ¶ 33 ("Johnson never pulled his service weapon while having [a] conversation with [Davis]."). Nor does it allege that Johnson was one of the officers who shot at Davis while he was under the truck. *See id.* ¶ 41. There is thus no basis for the Court to infer that Johnson directly caused a deprivation of Davis's Fourth Amendment rights.

The Estate instead alleges that Johnson as the supervisor present at the scene should be held liable for the conduct of the John Doe Deputies. The Estate is correct that while an official's "own individual actions" must "violate[] the Constitution" to establish liability under § 1983 (*see Iqbal*, 556 U.S. at 676), those actions "need not be hands-on" (*see Riddick v. Barber*, 109 F.4th 639, 649 (4th Cir. 2024)). Indeed, while "a law officer may [generally] incur § 1983 liability only through affirmative misconduct," the Fourth Circuit recognizes two instances where an officer's failure to act can create liability: supervisory liability and bystander liability. *See Randall v. Prince George's County*, 302 F.3d 188, 202 (4th Cir. 2002); *see also id.* at 203-07 (applying both theories of liability). The Court addresses each basis in turn, rejecting both.

The Estate has failed to plead a § 1983 claim under the Fourth Circuit's three-part test for supervisory liability outlined in *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). Under that test, liability may be established if the Court answers all three of the below factors in the affirmative:

> (1) whether the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and

> unreasonable risk of constitutional injury; (2) whether the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) whether there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Younger v. Crowder*, 79 F.4th 373, 384 n.16 (4th Cir. 2023) (citing *Shaw*, 13 F.3d at 799) (internal quotations omitted). Recently, however, the Fourth Circuit has noted that a simpler question—whether the supervisor was deliberately indifferent—is "more in line with the Supreme Court's statement that supervisors can only be liable for their own misconduct in § 1983 suits." *Id.* (citing *Iqbal*, 556 U.S. at 677). On this premise alone, the Estate's supervisory liability theory against Johnson must fail.

The Estate does not offer sufficient allegations that Johnson was deliberately indifferent. To show deliberate indifference, a plaintiff may allege "[a] supervisor's continued inaction in the face of documented widespread abuses." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). A plaintiff "ordinarily … cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Id.* (citation modified). Nothing in the Complaint suggests that Johnson was on notice or should have anticipated the tragic outcome that evening. With "no basis upon which to anticipate the misconduct" (*id.*), Johnson cannot be said to have been deliberately indifferent under a supervisory liability theory.[6]

---

[6] For completeness, it is worth noting that the Estate also does not sufficiently allege a "pervasive and unreasonable risk of constitutional injury to citizens like [Davis]."

Perhaps recognizing that the Estate cannot establish deliberate indifference without any notice of prior conduct, the Estate instead argues such a requirement is unnecessary because Johnson was on scene during the incident. *See* Dkt. 29 at 8 (noting Johnson was "*personally present* at the scene during all relevant times" (emphasis in original)). The Estate would have the Court assign liability when an officer's "failure to act" sets in motion a series of events that causes another officer to employ excessive force. Dkt. 29 at 8; *see also id.* (arguing "[t]here is no indication that [Johnson] implemented any plan to safely apprehend [Davis]"). In doing so, the Estate attempts to remove the touchstone of the supervisory liability analysis: the "information known to a supervisor *before* an incident occurs." *Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014) (emphasis in original) (citing *Shaw*, 13 F.3d at 798-800)). That is not permissible under Fourth Circuit precedent. *See Gandy v. Robey*, 520 F. App'x 134, 141-42 (4th Cir. 2013) (rejecting effective causation theory against sergeant alleging that he "formulat[ed] a plan that 'set in motion' a series of events that [he] knew or should have known would cause the other officers to use constitutionally excessive force against [the decedent]"); *see also id.* at 142-43 (rejecting supervisory liability claim where plaintiff made no allegations that sergeant's subordinates engaged in prior misconduct).

---

*See Shaw*, 13 F.3d at 799 (internal quotations omitted). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799) (citation modified). There are no non-conclusory allegations to that effect in the Complaint, so dismissal on that basis is warranted as well.

15

The Estate also fails to plead a claim for bystander liability against Johnson.[7] An officer may be liable under § 1983 pursuant to a bystander liability theory "if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204 (quotation modified).

In this case, the Complaint fails to allege that Johnson had a reasonable opportunity to prevent harm to Davis. For Johnson to be held liable, "there must have been a realistic opportunity to intervene to prevent the harm from occurring," which typically requires a showing that "an officer had sufficient time to intercede or was capable of preventing the harm alleged." *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Where an application of force was brief and without warning, an officer does not have a realistic opportunity to intervene. *See, e.g., Burgess v. Fischer*, 735 F.3d 462, 475-76 (6th Cir. 2013) (affirming dismissal of excessive force claim premised on bystander liability where the "incident [did not] last[] long enough" for officers to "intercede to stop it" because the application of force was brief and complaint did not allege officers "had reason to anticipate" the force before it was applied); *North Carolina ex rel. Hailey v. Westmoreland*, 267 F. Supp. 2d 497, 502 (M.D.N.C. 2003) (dismissing excessive force claim premised on bystander liability where both applications of force were "without warning" and "very brief in nature").

---

[7] Although the phrase "bystander liability" is nowhere in the Complaint, the Estate was "not required to use any precise or magical words in their pleadings." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 418 (4th Cir. 2014) (quoting *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013)).

16

The Complaint alleges that immediately after the flashbang tossed at Davis went off, the John Doe Deputies "reacted to the sound of the flash-bang and began firing multiple rounds" at Davis. Dkt. 1 ¶ 41. Allegations that Davis was shot and killed "within a few seconds of the flash bang grenade detonating" do not plausibly allege that Johnson had time to intervene. *See Scott v. City of Saginaw*, 738 F. Supp. 3d 937, 947 (E.D. Mich. 2024) (internal quotations omitted) (complaint failed to allege bystander liability where it alleged that officers opened fire on plaintiff within seconds of officer's flashbang detonating).

Johnson did not personally deprive Davis of his constitutional rights and his presence on scene does not change that analysis under Fourth Circuit precedent. Therefore, under any proposed theory of personal, supervisory, or bystander liability, the Complaint fails to state a claim against Johnson in his individual capacity.

### C. The Estate Fails to Plead that Johnson in His Official Capacity Deprived Davis of His Fourth Amendment Rights.

The Complaint also fails to state a claim against Johnson in his official capacity under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality is a "person" within the meaning of § 1983 and it may be held liable for constitutional violations of its agents "when execution of a government's policy or custom, whether made by its lawmaker or by those who edits or acts may fairly be said to represent official policy, inflicts injury[.]" *Id.* at 694. It is undisputed that Johnson in his official capacity as representative of the Alamance County Sheriff's Office is a "municipality" under *Monell*. *See* Dkt. 16 at 14 (citing *Boyd v. Robeson County*, 169 N.C. App. 460, 621, S.E.2d 1, 5 (2005)). And it is also undisputed that he holds policymaking

authority over county policing efforts as Sheriff of Alamance County. *Cf. Parker v. Bladen County*, 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008) ("[U]nder North Carolina law, the sheriff, not the county encompassing his jurisdiction, has final policymaking authority over hiring, supervising, and discharging personnel in the sheriff's office.").

The only element of a *Monell* claim that the parties dispute is whether the Complaint sufficiently alleges a policy or custom that inflicted Davis's injury. *See* Dkt. 16 at 14-16; Dkt. 29 at 9-13. It does not. Under *Monell*, a municipality's liability "arises only when the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.3d 227, 229 (4th Cir. 1984). Accordingly, to plead a *Monell* claim, the Estate is "obliged to 'identify a municipal 'policy,' or 'custom' that caused [its] injury.'" *Walker v. Prince George's County*, 575 F.3d 426, 431 (4th Cir. 2011) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)). Here, the Estate asserts "[t]hreadbare recitals of the elements of [its] cause of action, supported by mere conclusory statements." *Id.* (quoting *Iqbal*, 556 U.S. at 672). Indeed, the Complaint does nothing more than plead in conclusory fashion the possible bases for concluding that a policy or custom exists. *See* Dkt. 1 ¶¶ 56-57; *see also Lyle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (listing the "four ways in which liability for a policy or custom may arise"). The Court does not credit those allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Rule 12(b)(6) requires more than "a formulaic recitation of the elements of a cause of action").

18

Perhaps recognizing this shortcoming, the Estate instead argues the Complaint sufficiently alleges that "the need for more or different training is so obvious" from Defendants' conduct in this one instance that the Court may infer a policy or custom. Dkt. 29 at 11 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). It is true that the Supreme Court in *City of Canton v. Harris*, "did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle reoccurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Brown*, 520 U.S. at 409.

But the Court does not agree that this is such a case where *Canton* would apply. "Because *Monell* liability cannot be predicated on a theory of *respondeat superior*, a single incident is almost never enough to warrant municipal liability." *Est. of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020). The Complaint contains only conclusory allegations that Johnson failed to train his deputies. *See* Dkt. 1 ¶ 57; *see also Connick v. Thompson*, 563 U.S. 51, 63 (2011) (*Canton* conceived of a "city that arms its police force and deploys the armed officers … *without training* the officers in the constitutional limitation on the use of deadly force" (emphasis added)). And it alleges only that Johnson could have and should have intervened to stop officers from shooting Davis *during the encounter in question*, which is insufficient to prove deliberate indifference under *Monell*. *See Jones*, 961 F.3d at 672 ("*Monell*'s deliberate indifference standard ensures that a municipality either knew or should have known about the deficiency, so it could remedy that

deficiency."). "At its core, the strict *Monell* test asks for some level of notice" and allegations that the ten John Doe Deputies "act[ed] at once" in front of Johnson "could not have put" Johnson and the Sheriff's Office "on earlier notice of the need to better train its officers." *See id.* (allegations that five officers simultaneously violated department's use-of-force policy were insufficient to establish claim for failure to train). The Estate's claims against Johnson in his official capacity thus fail.

## II. The Estate Fails to Plead a Wrongful Death Claim Against Johnson.

As explained above, the Estate's federal excessive force claim against Johnson fails. Thus, to the extent the Estate alleges a state law wrongful death claim against Johnson, this claim must also fail. Wrongful death under North Carolina law requires a predicate "wrongful act" to impose liability. *Cf.* N.C. Gen. Stat. § 28A-18-2 (requiring a predicate "wrongful act" to impose municipal liability). In this case, the excessive force claims are the only qualifying predicate acts the Estate pleads against Johnson. *See Franklin*, 64 F.4th at 519 ("The use of excessive force is a wrongful act that can trigger the statute."). For the reasons noted above, the excessive force claims against Johnson are not adequately pleaded. Thus, any wrongful death claim against Johnson must also fail.

Johnson, however, on behalf of the as-of-yet-to-appear John Doe Deputies also argues that the Estate's wrongful death claims against the deputies are time-barred. Johnson argues "the Estate did not identify or name the [John Doe Deputies]" "within two years of Davis's death on May 8, 2023," as required by North Carolina's "strict two-year statute of limitation for wrongful death claims." Dkt. 16 at 18 (citing N.C. Gen. Stat. § 1-53(4)). The argument is premature as the John Doe Defendants are

20

not yet in the case. It is undisputed that the lawsuit was filed within the two-year statute of limitations because the Complaint was filed on November 19, 2024. *See generally* Dkt. 1. Whether the Estate may seek leave to amend the Complaint to substitute named deputies for the John Doe Deputies is a question best reserved for a different procedural posture, namely if the Estate moves to amend its pleadings. *See* Fed. R. Civ. P. 15(c)(1)(C).

### III. The Estate Fails to Allege that Johnson Caused Davis to Suffer Emotional Distress.

The Estate erroneously pleads state law claims for intentional and negligent infliction of emotional distress against Johnson on behalf of Davis's mother, Fujiwara, even though she is only involved in this case as the personal representative of the Estate. Because she is not an individual plaintiff in the case, Davis's mother may only bring a claim as "a personal representative of [the] decedent's estate." *See Est. of Seymour by Seymour v. Orange Cnty. Bd. of Educ.*, No. COA19-334-12, 2021 WL 347630, at *3 (N.C. Ct. App. Feb. 2, 2021). Indeed, "[a]ll actions or proceedings brought by ... personal representatives ... upon any cause of action or right to which the estate of the decedent is the real party in interest, *must be brought by ... them in their representative capacity*." N.C. Gen. Stat. § 28A-18-3 (emphasis added). To survive a motion for judgment on the pleadings, therefore, the Complaint must plausibly allege Defendants intentionally and/or negligently inflicted emotional distress on Davis.

Here, however, all the allegations in the Complaint concerning the Estate's intentional and negligent infliction of emotional distress claims pertain to *Fujiwara*,

*Davis's mother* (who is not a party to this action), and not *Davis*. *See, e.g.*, Dkt. 1 ¶ 81 ("Defendant[s] either knew, or should have known ... Plaintiff was either certain, or substantially certain, to suffer severe ... emotional distress by reason of the conduct taken against [Davis]."). In short, the Complaint does not sufficiently allege "the type, manner, or degree of severe emotional distress" Davis—as opposed to Fujiwara as an individual plaintiff—suffered, which is required "to state a valid claim for" intentional and negligent infliction of emotional distress. *See Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 746 S.E.2d 13, 20 (2013). Because the Estate erroneously asserts state-law intentional and negligent infliction of emotional distress claims on behalf of Fujiwara, not Davis, these claims fail.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, Johnson's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART.

Count I is DISMISSED WITH PREJUDICE as to all Defendants to the extent it asserts violations of the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment. Counts I and II are DISMISSED WITH PREJUDICE as to Johnson in his official capacity. Counts I and II are DISMISSED WITHOUT PREJUDICE as to Johnson in his individual capacity because the Court cannot conclude that the deficiencies it has identified are "incurable through amendment." *See McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009). For the same reason, Counts III and IV are also DISMISSED WITHOUT PREJUDICE. *See id.*

22

Because the only remaining defendants are the unidentified John Doe Deputies and Unknown Surety, the Estate is ORDERED TO SHOW CAUSE why this case should not be dismissed. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant[.]"); *Attkisson v. Holder*, 925 F.3d 606, 627-28 (4th Cir. 2019) (affirming dismissal without prejudice under Rule 4(m) for failure to timely identify and serve Doe defendants). The Estate is further ordered to explain why proceedings in this Court may proceed against the Unknown Surety considering this Court's dismissal with prejudice of all claims against Johnson in his official capacity. *See, e.g.*, *Moore v. Barnes*, 802 F. Supp. 3d 792, 854 (E.D.N.C. 2025) ("A surety ... is a necessary party to proceedings against the sheriff and sheriff's deputies in their *official* capacities." (emphasis added)); *Summey v. Barker*, 142 N.C. App. 688, 544 S.E.2d 262, 265 (2001) ("The statutory requirement of a bond removes the sheriff from the protective embrace of governmental immunity ...." (internal quotations omitted)). The Estate has fourteen days from the entry of this Memorandum Opinion and Order to respond to the show cause order.

Johnson's motion is DENIED in all other respects. It is so ORDERED.

This the 3rd day of March, 2026.

LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE

23